**ALLSTATE INSURANCE COMPANY**

v.

**The UNITED STATES.**

**No. 382–73.**

United States Court of Claims.

Feb. 18, 1976.

Glen H. Kanwit, Chicago, Ill., for plaintiff; William A. Cromartie, Chicago, Ill., atty. of record. Patrick A. Heffernan, Hopkins, Sutter, Mulroy, Davis & Cromartie, Chicago, Ill., of counsel.

Donald H. Olson, Washington, D.C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D.C., for defendant. Gilbert W. Rubloff, Washington, D.C., of counsel.

Before DURFEE, Senior Judge, and NICHOLS and KASHIWA, Judges.

KASHIWA, Judge.

This case requires us to return for a further refinement to the identical area covered in *Humble Oil & Refining Co. v. United States*, 442 F.2d 1362, 194 Ct. Cl. 920 (1971), and *Humble Pipe Line Co. v. United States*, 442 F.2d 1353, 194 Ct.Cl. 944 (1971). That area is the tax treatment of payments or reimbursements by an employer to employees for moving expenses. The *Humble* cases involved the question of withholding of tax by employers on these payments. Both *Humble Oil* and *Humble Pipe* dealt with the year 1961. This case involves the quarters ending March 31, 1965, through December 31, 1969.

The case comes before this court on cross motions for summary judgment. The material facts are not in dispute. We hold for Allstate allowing its motion for summary judgment and denying defendant's motion for summary judgment, for reasons hereinafter stated.

During the taxable years 1965 through 1969, Allstate, a casualty insurance company with its principal office in Northbrook, Illinois, had in effect a written policy governing payment or reimbursement of its employees' moving expenses, titled "Employee Transfer Policy and Procedure." The written policy specified that:

> The expansion of the company requires that all offices be staffed with the best available personnel. Employees in responsible positions may be requested to relocate either to fill newly created jobs or to fill positions vacated.

\* \* \* \* \* \*

Although the company will reimburse employees transferred at company request for moving expenses, moves should be made as economically as possible. No unreasonable expense should be incurred by the employee.

Pursuant to the policy, Allstate paid both direct and indirect moving expenses of its employees. Direct expenses are those incurred to transport an employee, his immediate family, household goods,

and personal effects while indirect expenses are all other expenses related to the move, such as selling expenses of the old residence and the expense of house-hunting trips.[1] The direct moving expenses either paid or reimbursed by Allstate are not at issue in this case, only the indirect expenses are. The indirect moving expenses which Allstate either paid or reimbursed included the items listed in the margin.[2]

Allstate's moving expense policy was adopted for various business reasons, including Allstate's desire to have at all times the most qualified employees in the geographic locations needed by Allstate and to maintain employee morale by defraying expenses of moves at Allstate's request. Moving expense policies of the type maintained by Allstate are typical of companies of Allstate's size and geographic scope. Payments or reimbursements made by Allstate pursuant to its moving expense policy were made without regard to the employee's level of compensation, but were instead based solely on actual expenses incurred by each particular employee in moving. There was no relationship between Allstate's moving expense policy and Allstate's policy of compensating employees on the basis of the value of their services. Allstate did not solicit any commitment from employees transferred at its request and to whom moving expenses were paid or reimbursed that the employees continue in the employment of Allstate at the new location. No such commitment was considered necessary by Allstate. The amounts of reimbursed moving expenses paid by Allstate in each of the years at issue, by subledger account category, are listed in the margin.[3]

For each calendar quarter during the 1965 through 1969 period, Allstate timely filed Federal employment tax returns and timely paid the tax liability shown

1. See Rev.Rul.65–158, 1965–1 Cum.Bull. 34.

2. In its books of account, Allstate set up two subledger categories for the payment or reimbursement of indirect moving expenses, which are at issue in this case. Account number 61–03 included the indirect expenses incurred in the sale of the employee's home at his previous location and the purchase of his home in his new location and related expenses, described in categories 1 and 2. Account number 61–04 included duplicate housing expenses, described in category 3.

Category 1. Sale of home in previous employee location:
a. real estate sales commission
b. legal fees
c. title and trust charges
d. mortgage prepayment penalties
e. surveys
f. reimbursement of loss on sale of old house, if covered under Section 346.D.12 of the policy which stated that an employee would not be reimbursed for capital losses sustained in selling his house unless he was requested to move frequently or to move twice within an eighteen-month period and was not able to sell his house on a satisfactory basis.

Category 2. Purchase of home in new location and related expenses:
a. legal fees
b. new license plates and driver's license
c. credit report regarding new mortgage, purchase of new house

d. revenue stamps
e. escrow charges
f. cleaning of house or apartment
g. installation of appliances and drapes
h. tips to movers
i. title and service charges

Category 3. Duplicate housing expenses:
a. rent on second house
b. interest, taxes, utilities and insurance on second house
c. cleaning of new house
d. rent deposit—new apartment
e. reimbursement of loss on sale of old house, if covered under Section 346.D.12 of the policy
f. rental of motel while at new location before occupying new house
g. installation of new telephone
h. cost of subleasing old apartment
i. installation of rugs and drapes

3. A summary of the subledger accounts for accounts No. 61–03 and No. 61–04, referred to in footnote 2, for the years is as follows:

| Taxable Year | Allstate Account No. 61–03 | Allstate Account No. 61–04 | Total Indirect Moving Expenses Paid by Allstate |
|---|---|---|---|
| 1965 | $465,748.15 | $93,190.88 | $558,939.03 |
| 1966 | 492,021.72 | 101,285.20 | 593,306.92 |
| 1967 | 726,023.94 | 112,567.91 | 838,591.85 |
| 1968 | 802,362.36 | 114,897.81 | 917,260.17 |
| 1969 | 733,254.28 | 85,371.96 | 818,626.24 |

on each return. Allstate did not withhold from its employees with respect to its payment or reimbursement of indirect moving expenses, nor did its Federal employment tax returns reflect any withholding or any tax payments with respect to the reimbursed indirect moving expenses. The Commissioner of Internal Revenue assessed deficiencies against Allstate in the amount of $517,541.49 for the period 1965 through 1969, based upon a determination that the indirect moving expenses were taxable compensation to Allstate's employees subject to withholding under Section 3402 of the Internal Revenue Code. The detail of the deficiency computation is set forth in the margin.[4]

On June 4, 1971, Allstate paid the deficiencies assessed for 1965 and 1966. On October 28, 1971, Allstate paid the deficiencies assessed for 1967, 1968, and 1969 plus statutory interest. On June 1, 1973, Allstate timely filed claims for refund for each of the 20 calendar quarters encompassed in the 1965 through 1969 period, in the aggregate amount of $517,501.49 plus $61,782.74 in interest. On August 23, 1973, the Internal Revenue Service disallowed Allstate's claims for refund. Allstate then filed this action to recover the assessed deficiencies and interest aggregating $579,324.23, which it contended had been erroneously assessed and collected from Allstate.

■ The single question presented is whether Allstate's payment of such indirect expenses constituted the payment of "wages" within the meaning of Section 3401[5] of the Internal Revenue Code of 1954 so that Allstate is liable for withholding taxes thereon.

In *Humble Oil & Refining Co. v. United States, supra,* and *Humble Pipe Line Co. v. United States, supra,* this court held that the plaintiffs therein did not have to withhold tax on payments made to employees for indirect moving expenses. Defendant acknowledges this court's holding but states that there have been significant changes in the law in effect after 1961, the year involved in the *Humble* cases. Defendant points to the addition by Congress of Section 217 in 1964 which permitted a deduction for direct moving expenses of all employees and Section 3401(a)(15) which excepted from the definition of "wages" for withholding tax purposes remuneration paid "to or on behalf of an employee if (and to the extent that) at the time of the payment of such remuneration it is reasonable to believe that a corresponding deduction is allowable under section 217."

The following quotation from defendant's brief is the essence of its case. Since it is so important in order to fully comprehend defendant's argument, we quote it in full:

By the 1964 amendment to the definition of "wages" subject to withholding in Section 3401(a), Congress thus provided that no withholding was re-

---

4. The deficiency computations for the years involved are as follows:

| Year | Total Indirect Moving Expenses Deemed Subject to Withholding | Withholding Percentage | Withholding Tax Deficiency |
|---|---|---|---|
| 1965 .... | $558,939.03 | 12% | $67,072.68 |
| 1966 .... | 593,306.92 | | |
| | (1/1/66– 6/30/66) | | |
| | 288,682.04 | 12% | |
| | (7/1/66–12/31/66) | | |
| | 304,624.88 | 14% | 77,289.32 |
| 1967 .... | 838,591.85 | 14% | 117,402.85 |
| 1968 .... | 917,260.17 | | |
| | (1/1/68– 6/30/68) | | |
| | 458,630.09 | 14% | |
| | (7/1/68–12/31/68) | | |
| | 458,630.08 | 15% | 133,002.72 |
| 1969 .... | 818,626.24 | 15% | 122,793.92 |

5. Section 3401 as material herein provides:

"SEC. 3401. DEFINITIONS.

"(a) *Wages*—For purposes of this chapter, the term "wages" means all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash; except that such term shall not include remuneration paid—

\* \* \* \* \* \*

"(15) to or on behalf of an employee if (and to the extent that) at the time of the payment of such remuneration it is reasonable to believe that a corresponding deduction is allowable under section 217; or"

\* \* \* \* \* \*

quired on amounts paid by an employer to an employee as reimbursement for *direct* moving expenses. The necessary corollary of that provision is that amounts paid as reimbursement for *indirect* moving expenses are wages subject to withholding. And without regard to the *retrospective* force of that statement of Congressional policy upon 1961 in the *Humble* cases (not commented upon in the Trial Judges' opinions), certainly it would strain the legal mind to deny the *prospective* force of that necessary implication vis-a-vis the reimbursement of indirect moving expenses. Rather than belabor this readily apparent point, we will let the 1964 Congressional action speak for itself.

Shortly thereafter, on June 14, 1965, the Internal Revenue Service published Rev.Rul.65–158, 1965–1 Cum.Bull. 34, Appendix, *infra*. That Ruling took note of the 1964 Congressional action described above, and it reaffirmed the position of the Internal Revenue Service that reimbursement of indirect moving expenses produces taxable income to the employee. Moreover, the Ruling went further and specifically provided that, on facts substantially identical to those present in the instant case, the reimbursements were "wages," and the employer was liable for withholding taxes.

Thus by the action of Congress, and shortly thereafter by the Internal Revenue Service, taxpayer had ample notice of its duty to withhold taxes on the reimbursements of indirect moving expenses involved here. And as we clearly demonstrated herein, *supra*, the presence or absence of notice was the critical distinguishing factor in the *Humble* cases. The relevant legal developments between 1961 (the year involved in the *Humble* cases) and 1965 through 1969 (the years involved in this case), therefore, put the amounts in issue here in the same legal context as those paid to the new employees in the *Humble* cases, upon which withholding was required. [Emphasis in original. Footnotes omitted.]

Defendant attempts to use the notice argument in this case. Defendant argues that the holding of the *Humble* cases turns solely on the fact of notice. It then draws an implication from the 1964 law and points to a revenue ruling to indicate notice of a duty to withhold taxes on reimbursements of indirect moving expenses. We wish to point out that nowhere in the *Humble Pipe* opinion is the question of notice raised. There the court held that "when the plaintiff defrayed the moving costs of its employees (irrespective of whether such costs were 'direct' or 'indirect'), the plaintiff was not remunerating or paying the employees for services performed." [442 F.2d at 1356, 194 Ct.Cl. at 951.] In *Humble Oil* the court, in its answer to the question of whether the payments were remuneration for services performed so as to constitute wages, analyzed insurance company cases which held that certain convention expenses were not remuneration for services performed. The court concluded [442 F.2d at 1367, 194 Ct.Cl. at 929] that the payments "were not meant by Humble to be in any sense compensation 'for services performed.'" The court does refer to Rev.Rul.59–236, 1959–2 Cum.Bull. 234, requiring withholding on reimbursements of moving expenses to new employees and says in one sentence: "With knowledge of the Service position in Rev.Rul.59–236, *supra*, Humble should have withheld on those payments totaling a little over $46,000." [442 F.2d at 1369, 194 Ct.Cl. at 932.]

*Humble Oil* was a little different from *Humble Pipe*. New employees were involved but under Finding 11 their reimbursed expenses were only direct moving expenses. There are no direct expenses involved here so that portion of *Humble Oil* is irrelevant to this case. An examination of the reasoning in *Humble Oil* and *Humble Pipe* shows that the court was holding that payments or reimbursements for indirect moving expenses of existing employees were not remuneration for services performed.

We refer to our *Humble Pipe* decision and we quote:

Furthermore, the transfer of employees from Shreveport to Houston was the result of a business decision by the plaintiff (or its parent corporation) that the corporate interests of the plaintiff would be served to better advantage by transferring its headquarters office from Shreveport to Houston. The employees who moved from Shreveport to Houston did so because the plaintiff, for its own business purposes, was transferring their jobs to Houston, and they went along at the plaintiff's request in order to continue doing the plaintiff's work. Thus, the amounts which the plaintiff expended in defraying the moving costs of its employees were, "from plaintiff's point of view as an employer, expenditures incurred to advance its own wholly legitimate and bona fide business purposes." *Peoples Life Insurance Co. v. United States*, 373 F.2d 924, 929, 179 Ct.Cl. 318, 327 (1967). It follows that, in paying out amounts to defray its employees' moving costs, the plaintiff was not compensating or otherwise rewarding the employees for services rendered by them. [194 Ct.Cl. at 951, 442 F.2d at 1356–57.]

■ Nowhere in *Humble Oil* did we hold differently. We held:

* * * one must look beyond *Ritter* for the solution of the present problem. In my view, the correct answer is found in the cases of *Peoples Life Insurance Company v. United States*, 373 F.2d 924, 179 Ct.Cl. 318 (1967); *England v. United States*, 345 F.2d 414 (7th Cir., 1965), *cert. denied* 382 U.S. 986, 86 S.Ct. 537, 15 L.Ed.2d 475 (1966); and *Acacia Mutual Life Insurance Co. v. United States*, 272 F.Supp. 188 (D.Md., 1967). [442 F.2d at 1366, 194 Ct.Cl. at 927.]

*Peoples Life Insurance Co. v. United States*, 373 F.2d 924, 179 Ct.Cl. 318 (1967), and *Acacia Mutual Life Insurance Co. v. United States*, 272 F.Supp. 188 (D.Md.1967), held that the payment of employees' convention expenses did not constitute wages subject to withholding. This court went on to say:

Both *Peoples Life* and *Acacia Mutual* clearly indicate that, in contrast to the question of whether payment of moving expenses constitutes taxable income to an individual employee, where the withholding statute is involved, the matter should be viewed from the standpoint of the employer's purpose in making the payments. The record in this case is clear that Humble's payments of its employees' moving expenses were properly chargeable as ordinary and necessary expenses incurred in its trade or business and were not meant by Humble to be in any sense compensation "for services performed." [194 Ct.Cl. at 929, 442 F.2d at 1367.]

In *England v. United States*, 345 F.2d 414 (7th Cir. 1965), *cert. denied*, 382 U.S. 986, 86 S.Ct. 537, 15 L.Ed.2d 475 (1966), the Seventh Circuit stated " * * * the fact that the reimbursement received by England might not fall within item (1) 'Compensation for services, including fees, commissions, and similar items' is not in any way controlling." [At 416.] That court held that an employee received taxable income upon reimbursement of his moving expenses. This court concluded its discussion of the above cases with the following:

* * * Properly considered, it would seem that "compensation for services" involves a direct exchange of services performed by the employee in return for salary, bonus, and similar items. I cannot see that the moving expense payments here involved were intended to compensate the recipient-employee for services. Instead, they were incurred by Humble in the course of its ordinary business activities and to prevent its moving employees from suffering a loss. No doubt the offer to reimburse the employees was also an inducement to them to make the requested move. Without it, probably only highly paid employees would have agreed to move in order to keep their jobs. However, there is no apparent correlation between such an inducement payment and the performance of

services, and it must be for the latter before withholding thereon is required. [442 F.2d at 1368, 194 Ct.Cl. at 930.] Defendant argues that since Section 3401(a)(15) excepted direct moving expenses from withholding, that by inference indirect expenses are subject to withholding. We disagree, such an inference should not be made. The Court in *United States v. Merriam*, 263 U.S. 179, 187–88, 44 S.Ct. 69, 71, 68 L.Ed. 240, 244, (1923), stated:

> * * * But in statutes levying taxes the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer. *Gould v. Gould*, 245 U.S. 151, 153 [38 S.Ct. 53, 62 L.Ed. 211]. * * *

And in *Smietanka v. First Trust & Savings Bank*, 257 U.S. 602, 606, 42 S.Ct. 223, 224, 66 L.Ed. 391, 393 (1922), the Court said in discussing part of a revenue act: "The provisions of such acts are not to be extended by implication. *Treat v. White*, 181 U.S. 264, 267 [21 S.Ct. 611, 45 L.Ed. 853]; *United States v. Field*, 255 U.S. 257 [41 S.Ct. 256, 65 L.Ed. 617]; *Gould v. Gould*, 245 U.S. 151, 153 [38 S.Ct. 53, 62 L.Ed. 211]." In *Gould v. Gould*, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211, 213 (1917), the Court stated:

> In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government, and in favor of the citizen. *United States v. Wigglesworth*, 2 Story, 369; *American Net & Twine Co. v. Worthington*, 141 U.S. 468, 474 [12 S.Ct. 55, 35 L.Ed. 821]; *Benziger v. United States*, 192 U.S. 38, 55 [24 S.Ct. 189, 48 L.Ed. 331].

Since the *Humble* cases there have been two circuit cases on withholding, both holding for the taxpayers. *Stubbs, Overbeck & Associates, Inc. v. United States*, 445 F.2d 1142 (5th Cir. 1971), held that per diem payments to employees located at a remote jobsite were not wages subject to withholding. Judge Skelton of this court, sitting by designation, wrote the opinion. There was a revenue ruling which required withholding under the circumstances, Rev.Rul.59–371, 1959–2 Cum.Bull. 236. The court stated that a ruling "may be helpful in interpreting a statute, but it is not binding on the Secretary or the courts. It does not have the effect of a regulation or a Treasury Decision." [At 1147]. The Supreme Court stated the same proposition in *Helvering v. New York Trust Co.*, 292 U.S. 455, 468, 54 S.Ct. 806, 810, 78 L.Ed. 1361, 1368 (1934):

> The rulings * * * cited by the Commissioner * * * "have none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of the law."

In *Biddle v. Commissioner*, 302 U.S. 573, 582, 58 S.Ct. 379, 383, 82 L.Ed. 431, 438 (1938), the Court said " * * * departmental rulings not promulgated by the Secretary are of little aid in interpreting a tax statute, *Helvering v. New York Trust Co.*, 292 U.S. 455, 467–468 [54 S.Ct. 806, 810, 78 L.Ed. 1361] * * * ."

In commenting on the *Humble* cases, the Fifth Circuit in *Stubbs, Overbeck & Associates, Inc. v. United States, supra*, stated at 1150:

> In the *Humble Pipe Line Co.* case, the court pointed out that its employees were paid different wages depending on their individual skills and abilities and the value of their services to the company, but the moving costs of a particular employee were not in any way related to the value of his services to the company. The amount of his moving costs were fixed by other factors, such as size of his family, amount of furnishings to be moved

and other items. This is similar to the situation in the case before us, where the same living allowance was paid to all Houston employees at Bartlesville regardless of their wage rate or the value of their services to the plaintiff.

In the *Humble Oil & Refining Co.* case, the court said with approval that in both the *Peoples Life Ins. Co.* and *Acacia Mutual* cases, the courts had indicated that "where the withholding statute is involved, the matter should be viewed from the standpoint of the employer's purpose in making the payments." The court then pointed out that Humble's payments of its employees' moving expenses were ordinary and necessary business expenses and were not intended by Humble to be compensation for services performed. We think this is analogous to the situation in the case before us. * * *

In *Royster Co. v. United States*, 479 F.2d 387 (4th Cir. 1973), the court held that payments to salesmen to reimburse them for the cost of meals eaten in the sales territory were not subject to withholding since they were not attributable to any service on the part of the salesmen. A salesman was reimbursed regardless of his performance and performed no services while eating. He was not even on call.

We hold that the payments were not compensation for services based on the *Humble* cases, *Peoples Life Insurance Co. v. United States, supra; Acacia Mutual Life Insurance Co. v. United States, supra; Stubbs, Overbeck & Associates, Inc. & United States, supra*; and *Royster Co. v. United States, supra*.

## CONCLUSION

For the reasons above stated, we hold that the payments involved were not wages within the meaning of the withholding provisions and, therefore, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied. Therefore, judgment is entered for plaintiff with the amount of recover to be determined pursuant to Rule 131(c).