McGRAW–HILL, INC.

v.

The UNITED STATES

No. 58–75.

United States Court of Claims.

June 18, 1980.

Charles A. Schwartz, New York City, attorney of record, for plaintiff.

James S. Maxwell, Washington, D.C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D.C., for defendant; Theodore D. Peyser, Jr., Washington, D.C., of counsel.

Before FRIEDMAN, Chief Judge, and BENNETT and SMITH, Judges.

### OPINION

**PER CURIAM:**

This case comes before the court on defendant's exceptions to the recommended decision of Trial Judge Robert J. Yock, filed August 13, 1979, pursuant to Rule 134(h), having been submitted to the court on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, as hereinafter set forth,* it hereby affirms and adopts the decision as the basis for its judgment in this case and, accordingly, plaintiff is entitled to recover with judgment entered for plaintiff as set forth in the following Conclusion of Law.

### OPINION OF TRIAL JUDGE

YOCK, Trial Judge: This is an action to recover taxes paid by plaintiff, McGraw-Hill, Inc. for calendar years 1964 and 1965. Plaintiff agreed to the assessment and collection of these taxes and also waived to some extent its right to claim a refund. The issues in this case are: (1) whether plaintiff paid its own liability for withholding taxes attributable to certain indirect moving expense reimbursements made to its employees 1964 and 1965 so as to be able to claim a refund when the law subsequently changed, or whether plaintiff voluntarily paid the income tax liability of its employees attributable to such reimbursements so that as a volunteer it would not be able to claim a refund; and (2) whether plaintiff is estopped from claiming a refund by virtue of the administrative settlement to which it previously agreed.

▪ Defendant no longer argues that the indirect moving expense reimbursements paid by plaintiff to its employees are "wages" properly subject to withholding under section 3401 et seq. of the Internal Revenue Code of 1954 (hereinafter the "Code"). Previous decisions of the Court of Claims firmly establish that such reimbursements are not "wages" or remuneration for services performed by an employee for his employer within the meaning of section 3401 of the Code even though it is income to the employees under section 61 of the Code. *Allstate Insurance Co. v. United States,* 530 F.2d 378, 209 Ct.Cl. 1 (1976); *Humble Oil & Refining Co. v. United*

---

* Although the court adopted the trial judge's separate findings of fact, which are set forth in his report, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

*States*, 442 F.2d 1362, 194 Ct.Cl. 920 (1971); *Humble Pipe Line Co. v. United States*, 442 F.2d 1353, 194 Ct.Cl. 944 (1971). The principle of these decisions, *i. e.*, that "wages" is a less inclusive term than "income," has been recently affirmed by employment tax decisions involving other types of reimbursements (meal allowances) by an employer. *Central Illinois Public Service Co. v. United States*, 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82 (1978); *Hotel Conquistador, Inc. v. United States*, 597 F.2d 1348, 220 Ct.Cl. —— (1979). Therefore, defendant relies solely on the nature of the payments made by plaintiff (withholding tax or income tax) and the administrative settlement under which they were paid (creating an estoppel) as grounds for denying any recovery to plaintiff.

This court holds for the plaintiff.

## I. *Facts*

During the course of a corporate income tax audit of the plaintiff, Internal Revenue Service agents discovered that in 1964 and 1965 plaintiff had reimbursed some of its employees for direct and indirect moving expenses incurred in transfers at company request. Only the indirect moving expenses are at issue in this case. "Indirect" moving expenses are all moving expenses other than the expenses incurred by an employee in moving himself, his immediate family, household goods and personal effects in transferring from one work location to another. Rev.Rul. 54–429, 1954–2 C.B. 53. None of the reimbursements made by plaintiff had been reported on W–2 forms as compensation paid to employees, and no federal income tax had been withheld by plaintiff with respect to the reimbursements. The normal procedure in such cases would have been for the Internal Revenue

Service (hereinafter "the IRS") to assert a withholding tax deficiency against the employer and to examine the employees' individual income tax returns to determine whether the reimbursements had been treated as income. If the employee had not so treated the income, the IRS might then assess a deficiency against the employees' individual income tax account.[1]

In 1966, as a result of an inquiry from an employer, the IRS developed a special program (hereinafter called "the program") setting certain conditions under which the IRS would accept payment by an employer of the income tax liability of its employees attributable to indirect moving expense reimbursements. Under the program, the amount paid by the employer would be computed by approximating the income tax liability of the employees receiving reimbursements. The computation would be "grossed up" to give effect to constructive compensation derived from the employer's payment of the employee's tax liability. Interest would be due to the extent that interest would be payable by the employees if they were held individually liable for the tax.[2] The IRS would refrain from asserting any tax liability against employees for the reimbursements.[3] The employer would provide the IRS with a statement waiving its right to claim a refund unless there was a change in IRS position. Withholding tax examination reports, procedures, and forms would be used with respect to the payments received under the program.

Plaintiff's accountant (Mr. Philip Weissman, who was deceased at the time of trial) handled all negotiations with the IRS agents during the course of the audit. Mr. Weissman was apprised of the program by IRS agents, and he drafted a settlement letter proposal containing several elements

1. Testimony indicated that in some case, the IRS would only assess the employer for the failure to withhold and not pursue the employees for income tax deficiencies because of the small amount of tax owed by each employee.

2. Interest would be payable from April 15 following the taxable year (the due date for individual income tax returns) rather than from the quarterly dates on which withholding (employment) tax payments are due. In addition, no

interest was due on the amount of the "gross up" which was considered current compensation.

3. In the event that both the employer and the employee paid the income tax liability of the employee with respect to a moving expense reimbursement, a refund was to be made to the employee.

of the program but lacking any specified amount of money to be assessed and any waiver of plaintiff's right to claim a refund. Separate settlement proposal letters for 1964 and 1965 were signed by plaintiff's vice president in charge of taxes, Mr. John L. Cady, and were sent to the IRS in 1968. Soon after the first proposal was made in February of 1968, Mr. Weissman and an IRS agent (Mr. Bernard Kaufman) began to negotiate the *amount* to be paid by plaintiff, but they could not reach an agreement. They apparently could never agree on what formula would be appropriate to use. Virtually no progress on this aspect of the plaintiff's audit was made for approximately 1 year.

In February of 1969, a new IRS agent (Mr. Adolph Zuckerman) was assigned. He made a computation of the rate of tax to be applied to the amount of indirect moving expense reimbursements by finding the average income tax rate applicable to the employees receiving reimbursements. Mr. Zuckerman's rate was lower than the first agent's rate because Mr. Zuckerman included a greater number of lowerpaid employees in his sample. Mr. Weissman was shown the calculations by Mr. Zuckerman and he agreed to the amount proposed. Upon the recommendation of the accountant, Mr. Cady, plaintiff's vice president for taxes, executed on March 17, 1969 for 1964 and on September 24, 1969 for 1965, withholding tax forms agreeing to the assessment and collection of the amount proposed by the IRS agent. Mr. Cady also sent the IRS a letter[4] with respect to each year in issue (1964 and 1965) which stated:

> In accordance with your request, we wish to advise you that no claim for refund will be filed covering this payment, unless it should be determined by subsequent court decision or Internal Revenue

Ruling that such tax was illegally collected.

The IRS agreed to the plaintiff's proposals as submitted by the plaintiff.

Plaintiff paid the taxes to which it had agreed and the interest thereon on March 9, 1970 for both years in question. After decisions were entered in *Humble Oil & Refining Co., supra,* and *Humble Pipe Line Co., supra,* on May 14, 1971, holding that no withholding tax was payable with respect to indirect moving expense reimbursements to employees, plaintiff filed a timely claim for refund, which is the basis for the present action.

## II.  *Discussion*

### A.  *Nature of tax paid.*

■ It is firmly established in this court that a volunteer, paying the taxes of another, has no valid claim for a refund. *Fidelity & Casualty Co. v. United States,* 490 F.2d 960, 203 Ct.Cl. 486 (1974); *J. C. Pitman & Sons, Inc. v. United States,* 317 F.2d 366, 161 Ct.Cl. 701 (1963). The plaintiffs, in the above cases had clearly paid the taxes of another, and therefore, fell into that fatal category of being volunteers. However, in the present case, the parties cannot agree whether the amount paid by plaintiff represents a voluntary payment of its employees' income tax liability or a payment of plaintiff's own withholding tax liability. The defendant argues forcefully for the former position and the plaintiff argues just as strenuously for the latter position.

It is apparent that the tax paid by plaintiff was calculated by reference to the potential income tax liability of its employees because the rate applied to the amount of indirect moving expense reimbursements was significantly higher than the 14 percent rate for withholding tax applicable to the years in question.[5] Plaintiff paid a tax of

---

4. The letter pertaining to the 1965 tax assessment is dated November 11, 1969. The parties stipulated that a similar letter was sent by plaintiff to the IRS pertaining to the 1964 tax assessment, at about the same time, however, neither party was able to locate the letter or a copy for introduction into evidence at trial.

5. There is some disagreement between the parties as to the significance of the "gross up" and interest paid by plaintiff.

Defendant maintains that the gross up shows that plaintiff paid the employees' income taxes since the amount of the gross up reflects tax on the constructive compensation derived by the employer's payment of their income tax liabili-

28 percent on the amount of reimbursements in 1964 and 22 percent in 1965. Plaintiff's accountant was shown the computations by which the IRS agent arrived at these percentages, and a letter from the accountant to Mr. Cady indicates that the tax rate agreed on was calculated from tax rates of various employees sampled.

■ In view of the above, it must be found that the plaintiff's accountant understood how the IRS agent calculated the amount of tax to be paid. The accountant's understanding of the program seems to be incomplete in certain regards, but it is probable that in agreeing to the higher tax payments proposed by the IRS agent, the accountant understood, first, that the payment was being made pursuant to an established program of the IRS and, second, that the IRS would refrain from action against plaintiff's employees in return for the higher tax payment from plaintiff.[6] While plaintiff's vice president testified that he was not aware of any such IRS program at the time, the accountant was authorized to negotiate a settlement with the IRS and the vice president clearly ratified this settlement by signing the documents. Therefore, the knowledge of the accountant, as an agent acting within the scope of his duty, should be imputed to plaintiff. *Nolan v. Sam Fox Publishing Co.,* 499 F.2d 1394 (2d Cir. 1974), *aff'g,* 300 F.Supp. 1311 (SD N.Y.1969); *Eitel v. Schmidlapp,* 459 F.2d 609 (4th Cir. 1972).

■ None of the above factual conclusions, however, would preclude a finding that the accountant understood the transaction to be a withholding tax settlement which included plaintiff's employees as part of a package deal. Letters drafted by Mr. Weissman indicate that he regarded the payment made by plaintiff as a withholding tax payment.

Although defendant now insists that the payments were a voluntary payment of the income taxes of the plaintiff's employees and were not part of a withholding tax settlement, the IRS, during the operation of the program, never clearly decided what the nature of the tax was that formed the basis for the IRS program. Since the IRS position at the time was that all "income" received from an employer was also "wages" subject to withholding, the IRS may have felt no need to distinguish between income and withholding taxes. *See Allstate Insurance Co., supra,* 530 F.2d at 380–81, 209 Ct.Cl. at 5. *See also Central Illinois Public Service Co., supra,* 435 U.S. at 28, 98 S.Ct. at 921. The IRS memorandum initiating the program at times describes the amount to be paid by the employer as a withholding tax liability. The forms, as completed by the agents on plaintiff's case, were totally consistent with the treatment of the amount paid by plaintiff as withholding taxes, *i. e.,* withholding tax forms were used. No IRS form used in this case contains a notation to show that a withholding tax format was merely being used to effectuate a payment of employees' income taxes; rather, the IRS agent in his report explains the principal cause of changes in plaintiff's return as "[f]ailure to deduct and

---

ty. However, a withholding tax deficiency was grossed up in *Humble Pipe Line Co. v. United States,* 442 F.2d 1353, 194 Ct.Cl. 944 (1971). Since income and withholding taxes are both levied on a gross amount without any deduction for taxes paid or withheld out of that amount, the tax on a net amount must be grossed up or pyramided to reflect a proper amount of tax.

Interest was assessed against plaintiff from February 1 following each taxable year in a manner consistent with the treatment of plaintiff's payment as withholding taxes. This assessment was inconsistent with the terms of the program, but apparently IRS employees in the regional service center were not informed

at first that interest on payments by employers participating in the program should be assessed as if interest was being paid by employees on income tax deficiencies. Thus, this inconsistency indicates not that the payments by plaintiff were considered by the IRS to be outside the program, but rather that the terms of the program were not even clearly explained to or understood by all IRS personnel.

**6.** The accountant's lack of comprehension is understandable since he was never shown any document thoroughly explaining the program. He was only shown one manual supplement containing little more than the formula by which payments were to be calculated.

withhold tax on certain moving expense allowances and reimbursements, Rev.Rul. 54–429, C.B. 1954–2, 53." The IRS recorded the amounts in question as assessed against plaintiff and as paid by plaintiff for its own account. The IRS also computed the interest as if it were a withholding tax liability as opposed to an employee income tax liability.

The payments made by plaintiff were procedurally treated as withholding taxes owed by plaintiff, but were calculated by reference to the income tax liability of plaintiff's employees. Since the substance of the transaction can be fairly categorized as either a voluntary payment of another's income tax or a withholding tax settlement, which included others as part of a package deal, the form of the transaction should be controlling. The IRS chose to cast the transaction in a withholding tax format, and it would be improper to deny plaintiff its usual right to sue for a refund of withholding tax because of a distinction never clearly expressed by the IRS to the plaintiff at the time. This court thus concludes that plaintiff's characterization of the tax as payment on the withholding tax liability is appropriate under the facts of this case.

It has been clearly held by this court in the *Hotel Conquistador, Inc., supra*; *Allstate Insurance Co., supra*; and the *Humble* cases, *supra*, that when dealing with the withholding tax liability of an employer, that those employers must have a precise idea of what they are supposed to do and why. Regulations, rulings, memorandums, and "programs," must be specific and preferably published so that the guidance is readily available to them. It is a matter of adequate notice so that the "deputy tax collector" employers will know what the law is thought by the IRS to be and what actions they therefore have to take. In this case, the program was not published. It was merely orally *explained* to the accountant, who did not even have the benefit of a copy of the "internal memorandums" that made up the program so that he could study or reflect on it. The plaintiff's vice president for taxes testified that he neither saw nor heard anything of the program. Had the program been published in some format or at least been available by copy handout, he could have hardly so testified and been believed. In any event, the promulgation of this program was clearly inadequate to provide appropriate notice. The way this program was promulgated, and specifically the way i'. was communicated to the plaintiff in this case, invited the confusion that has resulted in this case. Since the confusion is attributable to the Government, the Government bears the responsibility for it. *See also Central Illinois Public Service Co., supra*, 435 U.S. at 31, 98 S.Ct. at 922.

This conclusion is further supported when it is kept in mind that, until a settlement was reached or agreed to, the plaintiff had a potential unliquidated withholding tax liability separate and apart from the employee's income tax liability. It stretches the imagination of this court to believe that this plaintiff or any similarly situated corporation would, out of the goodness of its corporate heart, voluntarily pay the income tax liability of its employees but for the considerable clout of section 3401 *et seq.* of the Code and all the potential interest and penalties that could be assessed against it. Happily in this case, common sense coincides with the overwhelming weight of the evidence. The plaintiff (through its vice president and accountant) was thinking first and foremost of itself and its best corporate interests. Hence, it protected itself by making proposals which included waiving any refund claim only if certain events (*i. e.*, court decisions or IRS rulings adverse to the current Government position) did not occur. Only secondarily was the plaintiff interested in assisting its employees to the extent it could do so and justify doing so internally. The plaintiff, in short, entered into this program *primarily* because *it* had a potential withholding tax liability and this payment satisfied that corporate liability. The defendant acknowledged as much (the philosophical basis for the program was the employer's withholding liability) by abolishing the entire pro-

gram on July 26, 1972, after the *Humble* cases, *supra*, were decided.

This conclusion is also buttressed by the contemporaneous views of the parties regarding plaintiff's right to claim a refund. From the IRS memorandum establishing the program and from plaintiff's letters waiving to some extent its right to claim a refund, it is clear that the parties considered that plaintiff had a right to claim a refund except to the extent waived. Therefore, this waiver should be given effect, and plaintiff should be barred from recovering the taxes that it has paid *only* if it is estopped by the terms of its waiver.

B. *Equitable estoppel.*

█ There is a long-standing conflict amount the federal courts as to whether a taxpayer can be estopped from suing for a refund by an agreement less formal than the closing agreement or compromise statutorily described in sections 7121 and 7122 of the Code. However, the Court of Claims has consistently adhered to a more "liberal" view of estoppel. It has applied the doctrine of equitable estoppel whenever the IRS cannot be placed in the same position it was in when the agreement was executed. *D.D.I., Inc. v. United States*, 467 F.2d 497, 199 Ct.Cl. 380 (1972), *cert. denied*, 414 U.S. 830, 94 S.Ct. 61, 38 L.Ed.2d 65 (1973); *H. W. Nelson Co. v. United States*, 308 F.2d 950, 158 Ct.Cl. 629 (1962); *Guggenheim v. United States*, 77 F.Supp. 186, 111 Ct.Cl. 165 (1948), *cert. denied*, 335 U.S. 908, 69 S.Ct.

411, 93 L.Ed. 441 (1949). Estoppel has been applied if the statute of limitations on assessments against the taxpayer had expired or if the statute had expired against other parties not before the court who were part of a "package deal." [7] While the "liberal" view of estoppel first espoused in *Guggenheim, supra*, has not been followed in many circuits,[8] most circuits will apply the doctrine of equitable estoppel against a taxpayer despite the absence of a formal closing agreement.[9] Furthermore, the Supreme Court opinion in *Botany Worsted Mills v. United States*, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929), deliberately leaves open the possibility of estopping a taxpayer in such circumstances. In any event, it is clear that the doctrine of equitable estoppel is available in this court in circumstances far less formal than those in which the statutorily prescribed closing agreements have been utilized.

1. *Terms of the agreement.* Despite the availability of the equitable estoppel theory in this court, plaintiff can be barred from recovery only by the terms to which it had agreed. If these terms deviated from the terms envisioned by the IRS in its program, the Government is bound by the bargain actually made. To understand how the parties viewed the waiver of plaintiff's right to claim a refund, it is necessary to trace the evolution of the law regarding the taxability of indirect moving expense reimbursements during the period 1966 to 1969.

7. As the opinion in *D.D.I., Inc. v. United States*, 467 F.2d 497, 199 Ct.Cl. 380 (1972), *cert. denied*, 414 U.S. 830, 94 S.Ct. 61, 38 L.Ed.2d 65 (1973) pointed out, the use of estoppel is especially appropriate in the case of a settlement involving multiple taxpayers, some of whom are not before the court. In a single taxpayer settlement of multiple issues, defendant can, through the doctrine of equitable recoupment, litigate the issues conceded by it in settlement, despite the expiration of the statute of limitations (but, of course, defendant cannot collect any further deficiencies but only set off against any recovery by plaintiff). In a multiple-taxpayer settlement, however, defendant cannot set off deficiencies of other taxpayers against the claims of the plaintiff taxpayers.

8. *Uinta Livestock Corp. v. United States*, 355 F.2d 761 (10th Cir. 1966); *Associated Mutuals, Inc. v. Delaney*, 176 F.2d 179, 181 n.1 (1st Cir. 1949); *Bank of New York v. United States*, 170 F.2d 20 (3d Cir. 1948); and *Joyce v. Gentsch*, 141 F.2d 891 (6th Cir. 1944).

9. *Stair v. United States*, 516 F.2d 560 (2d Cir. 1975); *General Split Corp. v. United States*, 500 F.2d 998 (7th Cir. 1974); *Quigley v. Internal Revenue Service*, 289 F.2d 878 (D.C.Cir. 1960); *Cain v. United States*, 255 F.2d 193 (8th Cir. 1958); *Daugette v. Patterson*, 250 F.2d 753 (5th Cir. 1957), *cert. denied*, 356 U.S. 902, 78 S.Ct. 561, 2 L.Ed.2d 580 (1958); *Monge v. Smyth*, 229 F.2d 361 (9th Cir. 1956), *appeal dismissed per curiam*, 351 U.S. 976, 76 S.Ct. 1055, 100 L.Ed. 1493 (1956).

In 1966, at the time when the terms of the program were being formulated by the IRS, *England v. United States*, 345 F.2d 414 (7th Cir. 1965), *cert. denied*, 382 U.S. 986, 86 S.Ct. 537, 15 L.Ed.2d 475 (1966), had just been decided, and *Ritter v. United States*, 393 F.2d 823, 183 Ct.Cl. 875, (1968), *cert. denied*, 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed.2d 115 (1968), and *Commissioner v. Starr*, 399 F.2d 675 (10th Cir. 1968), were still pending. All of these cases involved the question of whether indirect moving expense reimbursements were taxable as income to the employee. In the beginning, the IRS asked for closing agreements from employers participating in the program, but closing agreements are final settlements and cannot be altered to provide for refunds based on certain contingencies. Therefore, to benefit cooperative employers in the event of a change in the law, the IRS decided to accept, in lieu of a closing agreement,

A statement that a claim for refund will be filed only when and to the extent that reimbursements of relocation expenses presently held to be taxable are determined by the Service to be non-taxable and

\* \* \* A comment stating that no claim will be filed later than two years following the date of payment.[10]

The IRS employee, Mr. Harry Gotwisner, who developed the program, testified that the IRS was only thinking of the *England, Ritter* and *Starr* cases (involving income to the employee) when the program was being formulated, and that he was not aware of the issue in *Humble Oil & Refining Co., supra*, and *Humble Pipe Line Co., supra*, until the decisions in these cases were published in 1971. The taxpayers in the *Humble* cases contended that indirect moving expense reimbursements were not "wages" subject to withholding under section 3401 *et seq.* of the Code despite their treatment as taxable income to the employee.

By 1969, when plaintiff wrote the letters waiving in part its right to seek a refund, the *England, Ritter* and *Starr* cases had been decided in favor of the Government, and all appeals exhausted. The IRS made no change in its program to clarify its reliance on the above cases as the basis for its program, even though there was little further possibility of an adverse court decision and subsequent IRS change of position on the taxability of reimbursements as income. On the other hand, plaintiff's vice president testified that he was aware of the pendency of the *Humble* cases, and plaintiff's accountant undoubtedly also was aware of those cases.

When the accountant drafted the waiver, he departed significantly from the terms required by the IRS in the memorandum outlining the program. For instance, there is no comment in the waiver document that no claim will be filed later than 2 years following the date of payment. More significantly, the waiver reserves the right to claim a refund not only in the event of a change in the law by an Internal Revenue Ruling, but also in the event of a change in the law *by subsequent court decision.* Neither the IRS memorandum nor plaintiff's waiver specifies whether it means a change in the law regarding income tax or withholding tax. The IRS position, at least prior to the decisions adverse to the Government in the *Humble* cases, was that the two taxes were of equivalent scope or coterminous, *i. e.*, that whatever was income to an employee paid by an employer was also wages. In view of the above, it is concluded that the accountant, in drafting the waiver, was thinking of the issue in the *Humble* cases, rather than issue in the *England, Ritter* and *Starr* cases, all of which were already decided. It is even more clear that the plaintiff's vice president was thinking specifically of the *Humble* cases, when he signed the waiver proposals and sent them on to the Government.

---

**10.** IRS Memorandum dated May 5, 1967 from Alfred L. Whinston, Assistant Regional Commissioner (Audit), North-Atlantic Region to all District Directors.

Under the circumstances, this is not an appropriate case to estop plaintiff from recovering the taxes that it has paid. The conditions upon which plaintiff reserved the right to claim a refund have been met. Any confusion regarding the conditions agreed to by plaintiff can be traced to the Government. The IRS failed to ever put into writing the distinction that it supposedly drew between a change in the law regarding income tax and withholding tax. Defendant now seeks to impose this unexpressed distinction on plaintiff. The IRS failed further in not publishing or explaining clearly to plaintiff the terms of its program. As a result, plaintiff deviated from the terms of the program by providing for a refund claim in circumstances other than an official change of position by the IRS. Finally, the IRS failed to object to this deviation and is therefore bound to honor the terms that plaintiff proposed and agreed to, and which the Government accepted.

2. *Statute of limitations.* There is an additional ground for not applying any estoppel against plaintiff in this case. Despite claims to the contrary, defendant is in as good a position as it was when the agreement was executed. Even under the "liberal" view of estoppel set forth in *Guggenheim, supra,* and *D.D.I., Inc., supra,* the Government has suffered no detriment.

There is no detriment to the Government in this case because the statute of limitations for the collection of income tax deficiencies from plaintiff's employees *had expired* by the time plaintiff executed copies of Form 2504 agreeing to assessment and collection of withholding tax.[11] Plaintiff executed the agreements on March 17, 1969 with respect to the 1964 taxes and on September 24, 1969 with respect to the 1965

taxes. The statute of limitations on further collection of income taxes from the employees would normally have expired on April 15, 1968 with respect to 1964 taxes and on April 15, 1969 with respect to 1965 taxes.[12]

Plaintiff did make proposals to the IRS before the statute of limitations against the employees had expired. On February 16, 1968, and on October 10, 1968, plaintiff sent the IRS letter proposals containing some of the elements of the IRS program. However, these proposals could not be accepted immediately and were not, as there was a very real disagreement as to the amount of tax to be paid. Moreover, plaintiff had not yet expressed any agreement to waiving its right to claim a refund. In any event, by the time that a final and complete agreement had been reached, the statute of limitations against the employees had expired. The IRS continued to negotiate as the statute ran out and failed to take any decisive steps against plaintiff or its employees to protect its right to pursue any income tax deficiencies against the employees. It could have and, in view of the negotiating history of this case, should have done so. The Government cannot act in reliance upon something which is not even close to settlement or agreement. It is not clear why, after the expiration of the statute, plaintiff agreed to pay a higher withholding tax calculated by reference to its employees' income tax liability. Nevertheless, plaintiff has acted timely to correct its error, while defendant failed to act timely to protect its interest.

## CONCLUSION OF LAW

Based on the above, it is concluded that the tax plaintiff paid was a withholding tax and that plaintiff is not barred by its ad-

---

11. It was a violation of the terms of the program for the IRS to ask an employer to participate after the expiration of the statute of limitations on the collection of income tax deficiencies from the employees.

12. Section 6501(a) and (b)(1) of the Code. Of course, there may have been some special circumstances under which the statute of limita-

tions against some of the employees did not expire until later. There was no evidence at trial of any special circumstances, and since the burden of proof is on defendant, when asserting an affirmative defense such as estoppel, it should be assumed that the statute expired at the usual date.

ministrative settlement from seeking a refund of its withholding tax payments attributable to indirect moving expense reimbursements made to its employees. Since defendant does not contend that the moving expense reimbursements were "wages" subject to withholding under section 3401 *et seq.* of the Code, it is ordered that judgment is entered for plaintiff.

Pursuant to the agreement of the parties prior to trial, a determination of the amount of recovery by plaintiff is reserved for further proceedings under Rule 131(c).