OSCAR MAYER & CO., INC. and Oscar Mayer & Co., Inc. (PA), Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 79–1743.

United States Court of Appeals, Seventh Circuit.

Heard Jan. 18, 1980.

Decided June 20, 1980.

Stanley S. Shaw, Jr., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Edward C. Rustigan, Chicago, Ill., for plaintiffs-appellees.

Before FAIRCHILD, Chief Judge, and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Wisconsin meatpacker and its Pennsylvania subsidiary sued to recover with interest alleged overpayments of $69,958.03 assessed against plaintiffs and Alpha Technical Services, Inc., a defunct subsidiary of the Wisconsin corporation, under the employer withholding provisions of the Federal Insurance Contributions Act (FICA), Federal Unemployment Tax Act (FUTA), and income tax laws.[1] Relying on the Supreme Court's then recent decision in *Central Illinois Public Service Co. v. United States*, 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82, the district court granted summary judgment for plaintiffs. On appeal, the Government challenges that judgment insofar as the FICA and FUTA withholding taxes are concerned. We affirm.

The facts material to our consideration are not in dispute. During 1969 and 1970 plaintiffs and Alpha provided approximately 863 automobiles, leased on a fleet basis, to some of their salesmen, livestock procurers, and grocery product salesmen who, as determined by division executives, needed automobiles in performing their jobs.[2] Each such employee was informed that the car was primarily for business use and that any personal use was expected to be incidental. The company required the employees to file standard expense reports, showing separately the business miles and personal miles accumulated during each week.

Employees thereafter received reimbursement from the companies for all expenses incurred in operating the automobiles, less a charge of 3½¢ to 4¢ per mile for each mile of personal use. This charge was intended to reimburse plaintiffs and Alpha "for incremental costs which resulted from any personal use of operating the automobile" (par. 8(3) of complaint).[3]

After an audit of the program, the District Director of the Internal Revenue Service in Madison, Wisconsin, determined that the charge for personal miles deducted from the reimbursement paid the employees failed to cover the companies' allocated costs for the personal use, including the employees' share of lease amortization, insurance, taxes and licensing. He found that the proper charges for 1969 should have been 11¢ per mile in the case of the Wisconsin plaintiff, 9¼¢ per mile in the case of the Pennsylvania plaintiff, and 10½¢ per mile in the case of Alpha and for 1970, 11¾¢ per mile, 11¼¢ per mile and 10¾¢ per mile respectively. He concluded therefore that the employees had received compensation from the company equal to the difference between the actual cost and the cost charged,[4] that this compensation amounted to "wages" for purposes of FICA, FUTA and income withholding taxes, and that the companies were liable for the resulting deficiencies in their withholdings under the statutes. After paying the additional assessments, plaintiffs filed claims for refunds, which were disallowed in full. This lawsuit followed.

1. The FICA taxes were imposed under 26 U.S.C. §§ 3101–3126; the FUTA taxes under 26 U.S.C. §§ 3301–3311; and the regular withholding taxes under 26 U.S.C. §§ 3401–3404. The total amount of tax liability was $58,930.24 for the Wisconsin plaintiff, $10,060.60 for the Pennsylvania subsidiary, and $967.19 for Alpha. For the reasons discussed in the text *infra*, the contested liability now amounts to only $9,580.57.

2. Apart from one officer of Alpha, none of the employees provided with automobiles was an officer or significant shareholder of the companies.

3. In accordance with the recommendations of the firm that leased the automobiles, plaintiffs charged the employees for "running expenses,"

comprising the cost of gasoline, oil, maintenance repairs and tires. Plaintiffs computed these expenses as 3½¢ per personal mile throughout 1969 and an average of 3¾¢ per personal mile for 1970.

4. Accordingly, for 1969 the Government found that employees of the Wisconsin plaintiff received additional wages on account of personal use of the automobiles of 7½¢ per mile, employees of the Pennsylvania plaintiff 5¾¢ per mile, and employees of Alpha 7¢ per mile. The respective figures for 1970 were 8¢ per mile, 7½¢ per mile, and 7¢ per mile. (Record Item 5, p. 3.)

The theory of the complaint was that the employees did not receive compensation since they had been charged the fair market value for use of the automobiles for personal purposes. In the alternative, the complaint asserted that even if the employees received compensation through use of the automobiles for personal purposes, the compensation was not "wages" for purposes of FICA, FUTA and income withholding taxes. While the case was pending in the district court, the Supreme Court decided *Central Illinois Public Service Co. v. United States*, 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82. In *Central Illinois*, the Court held that reimbursement for lunch expenses of employees on company travel did not constitute "wages" subject to federal income tax withholding, even though the reimbursement assertedly represented income to the employees. It reasoned that "income" and "wages" are discrete concepts under the Internal Revenue Code, the former being an expansive term, the latter one that Congress had intentionally chosen to be "narrow and precise." 435 U.S. at 31, 98 S.Ct. at 922. That decision, based in part on legislative history (435 U.S. at 26–27), prompted plaintiffs to file a motion for summary judgment. Thereafter the Government conceded that any unreimbursed value of the use of company cars by plaintiffs' employees did not constitute "wages" subject to income tax withholding, but, because *Central Illinois* did not involve FICA and FUTA taxes, it maintained that the alleged compensation should still be considered "wages" for purposes of those taxes. The amounts left in issue were $9,318.18 for FICA tax and $262.39 for FUTA tax.

In granting summary judgment for plaintiffs, the district judge filed a supporting memorandum noting that the definitions of "wages" in FICA and FUTA were nearly identical to the income tax withholding definition. Although acknowledging minor departures in the language, he rejected the Government's assertion that these differences reflected a distinction between FICA and FUTA "wages" on the one hand and income tax "wages" on the other, supposed-

ly based on differences in the purposes of the taxes and in collection procedures. Judge Warren also noted that

"[t]o hold that the slight differences in the wording of the definitions of wages constitutes a difference in intent would prevent employers from being able accurately to predict what should be withheld for income tax purposes and what should be withheld for FICA and FUTA purposes. Such a result would be unfair." (App. B at 7a.)

He thus held that the word "wages" has the same essential meaning under all three statutes. The Government then took this appeal.

*The Meaning of "Wages" Under FICA and FUTA*

*Central Illinois, supra,* stands for the proposition that the concepts of "wages" and "income" are not identical for purposes of the tax laws. In particular, the Court in *Central Illinois* held that Congress used the narrower term "wages" in describing the source of an employer's withholding obligations because of Congressional concern for "simplicity" and "ease of administration" in the withholding context, where the employer is burdened with secondary liability for the taxes withheld. Noting that the meal stipends at issue in that case were not even clearly within the definition of income at the time they were provided, the Court found the "intentionally narrow and precise" concept of wages too narrow to comprise the additional income that those stipends now appeared to represent. 435 U.S. at 31, 98 S.Ct. at 922.

In this case, the Government has conceded that the value of the automobile use, like the meal stipends in *Central Illinois*, should not be included in the "wages" of the employees for income tax withholding purposes (Br. 4, 9). It follows, then, that the remuneration is not "wages" for FICA and FUTA purposes if the withholding provisions of those statutes are treated as *in pari materia* with the comparable income tax provisions. The Government's case depends primarily on its assertion that

the provisions should not be so treated and that *Central Illinois* does not suggest otherwise. Although *Central Illinois* admittedly did not reach the specific issue of this case, its discussion of "wages" represented an effort to delineate the concept embodied in that term as it appears in the tax laws. That the FICA and FUTA statutes employ the same term in an identical context strongly suggests that the general concept Congress intended to apply here was the same.

It is, moreover, highly significant that the Court in *Central Illinois* specifically approved the Fourth Circuit's decision in *Royster Co. v. United States*, 479 F.2d 387 (1973), in which the similarity among the three withholding statutes was expressly noted and in which that court found the remuneration at issue—reimbursement for the cost of meals its salesmen purchased during their days on the road—not to be wages under all three statutes.[5] The court's assumption that the three provisions embodied the same concept undoubtedly stemmed from its description of the three statutes as follows:

> "Concerning FICA. 26 U.S.C. §§ 3101 and 3102 impose a tax for old age, survivors, disability and hospital benefits and require the employer to collect such taxes from the wages of the employee. § 3121(a) defines 'wages' within the meaning of §§ 3101 and 3102 as 'all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash.' Concerning FUTA. 26 U.S.C. § 3306(b) likewise defines 'wages' as 'all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash.' For the purposes of withholding income tax by the employer, 26 U.S.C. § 3401(a) defines wages: 'For purposes of this chapter, the term "wages" means all remuneration for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash.' " (479 F.2d at 389–390.)

In reaching the subsequent *Central Illinois* result that "wages" under these statutes is narrower than "income," the *Royster* court held that the remuneration in question was not attributable to any services on the part of the employees so that the requirement of "wages" in all three statutes was not satisfied. That the FICA and FUTA statutes refer to remuneration "for employment" rather than "for services performed * * " did not alter the court's conclusions. See 479 F.2d at 390–392.

More recently, the Court of Claims in *Hotel Conquistador, Inc. v. United States*, 597 F.2d 1348 (Ct.Cl.1979), certiorari denied, 444 U.S. 1032, 100 S.Ct. 702, 62 L.Ed.2d 668, held that meals a taxpayer supplied to its employees were not "wages" for purposes of computing FICA and FUTA taxes. The specific issue in *Hotel Conquistador* was whether the term "wages" under FICA and FUTA could in some cases be broader than "income" so that it might include items that were paid "for the convenience of the employer." Nevertheless, the court viewed as controlling the discussion in *Central Illinois* regarding the relationship between the terms "wages" and "income". It nowhere suggested that the relationship between the two concepts was in any way different in the FICA/FUTA context. To the contrary, the Court of CLaims discussed *Royster* with approval and, despite the "remuneration for employment" language of the FICA and FUTA statutes, applied the test of *Royster* in finding that there was no showing that any work was done or service rendered by the employees while receiving the free meals. 597 F.2d at 1351, 1352.

We are aware that the purposes of FICA and FUTA and the collection practices under their withholding provisions are in some respects different from those in the income tax laws. It is true, for example, that *Central Illinois'* concerns about secondary liability are less relevant in this context and that FICA is unusual in that the determination of "wages" under that statute will

---

5. It is noteworthy that in *Royster* the Government agreed "that wages has the same essential meaning under all the statutes here in question." 479 F.2d at 390.

have a unique impact on the employee, ultimately determining the level of his social security benefits. These differences do not render the concern for simplicity and ease of administration expressed in *Central Illinois* nugatory in the FICA/FUTA context. Indeed, in this case the Government seeks to hold the employer liable for an amount that is hotly contested and that is simply not amenable to precise calculation before the fact.[6] Even assuming, moreover, that these distinctions are of some significance in the abstract, they do not of themselves support the Government's attempt to differentiate the general use of the term "wages" in the two contexts. The seemingly inconsequential differences in statutory language belie an assertion that Congress intended to adopt broad policy differences in establishing the various withholding programs. Since there has been no showing by the Government to the contrary, we conclude that Congress' use of the term "wages" in both contexts reflects an intent that the term be construed for FICA and FUTA purposes congruently with the manner *Central Illinois* prescribes for the income tax provisions.

*FICA and FUTA Regulations Inadequate to Support Assessments*

Our conclusion regarding the congruent use of the term "wages" does not necessarily imply that the term serves an identical purpose in all three statutes. It is conceivable that the Internal Revenue Service through its regulations could pinpoint any differences that Congress intended for the various withholding provisions. Such regulations, though subject to judicial scrutiny for consistency with the principles discussed above, would be entitled to some deference from this Court. In addition, they would, by placing the employer on notice, remove part of the objection posed above by the need for simplicity and certainty in the administration of the tax withholding laws.

The Government contends that this case in fact falls within this hypothetical mold. Thus notwithstanding its concession that the regulations and rulings under the income withholding tax do not bring the asserted value of automobile use within the scope of that provision (Br. 4, 9), the Government insists that the following FICA regulation clearly brings this value within the withholding provisions of that statute:

"Generally the medium in which remuneration is paid is * * * immaterial. It may be paid in cash or in something other than cash, as for example, goods, lodging, food, or clothing. * * *" (26 C.F.R. § 31.3121(a)–1(e).)

A similar regulation applies in the FUTA context. See 26 C.F.R. § 31.3306(b)–1(e).

Laying aside the question whether such a regulation, which adds little to the statutory language, might otherwise be adequate to overcome our finding of general congruency among the various provisions, a greater difficulty arises in that a virtually identical regulation exists for the income tax withholding statute. That regulation states

"Generally the medium in which remuneration is paid is also immaterial. It may be paid in cash or something other than cash, as for example, stocks, bonds, or other forms of property. * * *" (26 C.F.R. § 31.3401(a)–1(4).)

Since the income tax withholding regulation admittedly does not make any unreimbursed value of personal automobile use into "wages," obviously the FICA and FUTA regulations also do not do so. It is presumably in this vein that the Court of Claims expressly held in *Hotel Conquistador* that the free meals at issue were not wages for FICA and FUTA purposes in the absence of more specific regulations. 597 F.2d at 1354.

In addition, the above regulations under all three statutes state that if services are paid for in a non-cash medium, the "fair value" or "fair market value" of the item is the amount to be included as "wages." But in light of the consistent denials of plain-

**6.** In *Central Illinois* and *Hotel Conquistador* by contrast the amounts at issue were undisputed and known to the employer beforehand.

**1228**

tiffs here that there was any unreimbursed value at all in the automobile program, the regulations failed to provide any notice regarding the Government's method of computing these taxes (Rec. Item 8, p. 2; see also note 4 *supra*). In the absence of a much more specific regulation, the reasoning of *Central Illinois* regarding the concept of "wages" directly applies and calls for rejection of these FICA and FUTA taxes. See 435 U.S. at 32 and n. 12, 98 S.Ct. at 923 and n. 12, see also *Crown v. Commissioner*, 585 F.2d 234, 241 (7th Cir. 1978). In short, the present FICA and FUTA regulations simply do not support the Commissioner's assessments.

*A Remand Is Unnecessary*

The Government suggests (Br. 25–26) that at the very least it is entitled to a remand of this case for further findings to determine whether the following "facilities and privileges" exception contained in the FICA and FUTA regulations might apply:

> "Ordinarily, facilities or privileges (such as entertainment, medical services, or so-called 'courtesy' discounts on purchases), furnished or offered by an employer to his employees generally, are not considered as remuneration for employment if such facilities or privileges are of relatively small value and are offered or furnished by the employer merely as a means of promoting the health, good will, contentment, or efficiencies of his employees. * * *." (26 C.F.R. §§ 31.-3121(a)–1(f) and 31.3306(b)–1(f).)

The discussion above, however, indicates our belief that as a general matter "wages" under FICA and FUTA is to be construed congruently with "wages" under the income tax withholding provisions and that in this case no regulations exist placing the alleged compensation, which is admittedly not "wages" for income tax withholding purposes, within any gap that might exist between the two contexts. As such, like the district court we have found that the asserted unreimbursed value here simply is not "wages" and thus the availability of the exception to that concept in the FICA and FUTA context is of no concern.

The judgment of the district court is affirmed.