The **FIRST NATIONAL BANK OF CHICAGO, Plaintiff,**

v.

The **UNITED STATES, Defendant.**

**No. 248–89 T.**

United States Claims Court.

Sept. 28, 1990.

**480**

John L. Snyder, Chicago, Ill., attorney of record for plaintiff. Paul S. Caselton, and Marilyn D. Franson, Chicago, Ill., of counsel.

Robert J. Higgins, with whom were Asst. Atty. Gen. Shirley D. Peterson, and Mildred L. Seidman, attys., Dept. of Justice, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

Plaintiff, The First National Bank of Chicago ("the Bank"), is suing here to recover overpayments of Federal Insurance Contributions Act ("FICA") taxes. Defendant concedes that the taxes in issue were collected in error, but seeks dismissal of the claim based on plaintiff's failure to have followed the refund procedures mandated by Treasury Regulations. The issue is before us on defendant's motion for partial dismissal of the complaint; we grant the motion.

### I

For several years preceding and including the years at issue in this case, 1976 through 1978, the Bank provided its employees with free lunches on its business premises. The on-site lunches enabled employees to take short breaks from their work with minimal disruption to their jobs. The Bank did not include the value of these lunches in the employees' income for federal income tax purposes because, under section 119 of the tax code (26 U.S.C. § 119 (1990)), meals provided for the convenience of the employer are not considered income to the employee.

During an audit of the Bank's tax years prior to 1976, the Internal Revenue Service (IRS) notified the Bank that, notwithstanding the exclusion from income under section 119, the lunches did constitute "wages" subject to employment taxes under the Federal Insurance Contributions Act. 26 U.S.C. §§ 3101, 3111 (1990).

The Bank disputed this tax treatment; however, it did not prevail. Accordingly, in settlement of the audit, the Bank paid the FICA tax imposed on employers under section 3111 of the code (the "Employer's FICA Tax") and the FICA tax imposed on employees under section 3101 of the code (the "Employees' FICA Tax"). The Bank did not attempt to collect or otherwise recover from the employees' current salaries the amounts paid on their behalf.

During the years subsequent to the audit, including the years in issue, the Bank continued the practice of paying the employees' FICA tax on the value of the meals provided to its employees without deduction from their take-home pay. Simultaneously, on each employee's Form W–2 (Wage and Tax Statement), the Bank reported its payment of the employees' FICA taxes as taxable wages subject to withholding for federal income tax purposes. Further, to insure against any diminution in each employee's take-home pay, the Bank also paid the resulting increase in federal income tax attributable to the added income. In sum, for each employee, the Bank determined and paid the total increase in tax burden attributable to the discharge of FICA tax liability. Thus, under the Bank's approach, each employee received the same take-home pay after the Bank began paying FICA taxes on the value of the lunches as he or she had received before such taxes were assessed.

Although no express agreement existed between the Bank and its employees with respect to payment of the employees' share of the FICA taxes, the employees had knowledge of the Bank's payments on their behalf because the Bank reported the payments on the employees' Forms W–2.

Each employee's Form W–2 reflected: (1) FICA wages attributable to the value of the lunches, (2) FICA tax withheld equal to the FICA tax on the lunches, (3) income tax withheld equal to 20% of the additional FICA tax, and (4) added income equal to the additional FICA tax and income tax withheld.

On January 29, 1980, the Bank filed a timely claim for refund of the employer's and employees' portion of the FICA taxes it had paid on the value of the lunches provided to its employees from 1976 to 1978.[1] The claim for refund was based on the position that the value of the lunches did not constitute remuneration from employment and therefore did not constitute wages subject to a FICA assessment.

On June 8, 1981, while the Bank's refund claim was pending before the IRS, the Supreme Court ruled in *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981) that the value of meals and lodging provided to employees for the employer's convenience did not constitute wages for purposes of either the Federal Insurance Contributions Act, 26 U.S.C. § 3121(a) (1990), or the Federal Unemployment Tax Act, 26 U.S.C. § 3306(b) (1990). "The plain language and legislative histories of [these] Acts," said the Court, "indicate that Congress intended its definition [of wages] to be interpreted in the same manner for FICA and FUTA as for income-tax withholding." 452 U.S. at 263, 101 S.Ct. at 2297.

The *Rowan* decision did not, however, end the matter for the Bank. A subsidiary question that came to the fore concerned the proper application of section 6402(a) of the tax code, which restricts claims for credit or refund to the "person who made the overpayment." Specifically, the issue was whether the Bank could be considered the payor—of both the employer and employee portions of the improperly assessed FICA taxes—in its own right or was obliged to attribute payment of a portion of the tax to the employees. If payment of

the employee's portion was attributable to the employee, the requirements of Treas. Reg. § 31.6402(a)–2 (1989) would be triggered. This regulation sets forth the basic procedural requirements for claiming refunds or credits of overpaid FICA taxes. It requires every claim filed by an employer for refund or credit of FICA tax "collected from an employee" to include a statement that the employer has repaid the tax to the employee or has secured the written consent of the employee to obtain his or her refund. The employer must retain the written receipt of the employee showing the date and the amount of the repayment, or the written consent of the employee, whichever is used to support the claim.

This issue provoked disagreement. The Bank's position was that since it had paid the taxes in question, it alone had the right to demand their refund. The IRS saw the situation differently. Since the taxes had been reported as part of the employees' income, the employees were the payors for purposes of obtaining the refund. Therefore, reimbursement of the employees by the Bank or the employees' written consent to the Bank's proceeding on their behalf would be required before the Bank could obtain a refund.

In an effort to resolve this impasse, the IRS district office referred the matter to the national office for guidance. On February 27, 1986, that office issued a technical advice memorandum adverse to the Bank's position. The memorandum explained:

Reimbursement or consent is not required prior to claiming a refund of both employer and employee FICA taxes if amounts were not deducted from the pay of employees. In determining if employee FICA tax was deducted from an employee, ... amounts included in gross income paid by an employer for the employee's FICA tax liability [are], in effect, deducted from his remuneration. Thus, employee FICA tax may be actual-

---

1. Refund claims for earlier years were barred by a three year statute of limitations. 26 U.S.C.

§ 6511 (1990).

ly or constructively collected from an employee. In the case at hand, employee FICA tax was included by the employer in the gross income of the employees as evidenced by the Forms W–2.

Based on the reasoning stated, the memorandum concluded that:

> there was a constructive collection of the employee FICA tax from the employees.... Because such amounts were, in effect, deducted from the employees' pay, the reimbursement/consent provisions of the regulations under section 6402 of the Code and the procedures outlined in Rev.Proc. 81–69 must be followed.[2]

The Bank chose not to follow the technical advice it had received. It elected, instead, to pursue the vindication of its position in this court. Suit was filed here on May 3, 1989.

## II

The argument for the bank begins with the text of Treas.Reg. § 31.3401(a)–1(b)(6) (1989) which defines the term "wages" for federal income tax withholding purposes. The regulation states that wages include:

> the amount paid by an employer on behalf of an employee (without deduction from the remuneration of, or other reimbursement from, the employee) ... on account of any tax imposed upon the employee ... including the taxes imposed by [section] 3101.

On the basis of this regulation, the Bank contends that if an employee has income because tax payments have been made by an employer on behalf of an employee "without deduction from the remuneration of ... the employee," then the tax cannot simultaneously be deemed to have been "collected" from the employee. The only payor in this situation, argues the Bank, is the employer.

Although not without appeal, we think the Bank's argument is wrong as a matter of law. In *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929), a corporation had paid the income tax liability of its president. The question presented was whether the employee had received additional income in consequence of the payment. The Court held he had. The fact that the payment had gone directly into the Treasury without passing through the employee's hands was deemed immaterial.

> The payment of the tax by the employers was in consideration of the services rendered by the employee and was a gain derived by the employee from his labor. The form of the payment is expressly declared [by the Revenue Act of 1918] to make no difference.... It is therefore immaterial that the taxes were directly paid over to the Government. The discharge by a third person of an obligation to him is equivalent to receipt by the person taxed. 279 U.S. at 729, 49 S.Ct. at 504.

We encounter the same situation here. The Bank paid the tax on behalf of its employees as part of the compensation for their labor. Therefore, the employees received additional income. This much is conceded. But, to say, as the Bank does, that the tax was not "collected" from the employees is to misunderstand the rationale of the *Old Colony* rule.

The attribution of income to an employee, through tax payments made on his behalf by the employer, rests on the premise that the payments were made in return for services rendered. In other words, the payments were earned. Consequently, the payments retain their character as income of the employee even when paid over directly to the Government. And since payments made from the employee's income are in actuality payments by the employee, the employees in this case received addi-

---

**2.** The referenced procedure, Rev.Proc. 81–69, 1981–2 C.B. 726, prescribes the administrative steps for obtaining refunds for overpayment of FICA taxes following the *Rowan* decision. The procedure conditions any claim for a refund, where the employer had collected from the employee, on either the employer reimbursing employee or obtaining the employee's consent prior to filing a refund claim. Thus, the requirements parallel those contained in Treas. Reg. § 31–6402(a)–2.

tional income that was deducted, *i.e.*, collected, at the source and paid over to the Government.

In an attempt to overcome this conclusion the Bank calls attention to the results in *Hotel Conquistador, Inc. v. United States,* 220 Ct.Cl. 20, 597 F.2d 1348 (1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 702, 62 L.Ed.2d 668 (1980) and Rev.Rul. 83–136, 1983–2 C.B. 244. In each of these situations, the employer was not required to obtain the written consent of the employees prior to filing a claim for refund of FICA taxes that had been paid under protest because the payments had been made without deduction from the affected employees' pay. The Bank argues that it stands in a similar position to its employees in that it too paid the FICA taxes without deduction from their wages.

We disagree with this assertion. In the two situations referred to, *Hotel Conquistador* and the Revenue Ruling, the employer's tax payments were made under protest and were not shown as additional income and deduction on the employees' W–2 statements. In other words, the economic consequences of the transaction were not attributed to the employees; rather the payments were made by the employer for his own account. Here, by contrast, the employer filed W–2 statements for each employee showing increased income and FICA tax withholdings. Thus the transaction, as recorded, shows the employee as the source of the payment. The authorities relied on by the Bank are not on point.[3]

▮ There is a final point to consider. At the time of oral argument on the motion to dismiss, the question arose whether the

Bank could obtain a refund of its share of the FICA payments without complying with the Treasury's reimbursement/consent provisions. The answer is no.

The issue was confronted in *Atlantic Department Stores, Inc. v. United States,* 557 F.2d 957 (2d Cir.1977) and was there decided against the taxpayer. As explained by that court, the reason for this conclusion is that the "existing statutes and regulations [a reference, *inter alia,* to Treas.Reg. § 31.6402(a)–2(b) (1989) and Treas.Reg. § 31.6413(a)–1(b) (1975) ] clearly imply an obligation on the part of the employer to claim a refund or credit on behalf of those employees with respect to whom the employer can reasonably adjust its overpayment." 557 F.2d at 959.

This result was endorsed in *Hotel Conquistador,* 220 Ct.Cl. at 20, 597 F.2d at 1348 where the court said of the employee reimbursement requirement of Treas.Reg. § 31.6402(a)–2(b), "[i]t seems a clearly equitable requirement since the employer should not be allowed to correct its own error as affecting its own pocket, but not as affecting the employee's." 220 Ct.Cl. at 32, 597 F.2d at 1355. In light of this language, the issue plaintiff presents is not open for reexamination by this court. We are bound by the Court of Claims decision.

### III

For the reasons stated in this opinion, we grant defendant's partial motion for dismissal on the issue of whether the plaintiff may recover both the employer's and employees' portion of overpaid FICA taxes. Plaintiff is not entitled to recover the employer's or the employees' portion of over-

**3.** The Bank also raises the argument that to read *Hotel Conquistador* and the Revenue Ruling as involving situations in which the employer's payment of the employees' FICA tax was not attributed to the employee is to say that the employer failed to do what was required by law: report the payment as additional income on the employees' W–2 statements.

The Government says in answer to this contention that, under 26 U.S.C. § 6205(b) (1990) and Treas.Reg. § 31.6205–1(b)(3) (1981), withholding for a disputed FICA tax liability is not required until the amount of that liability has been fixed with certainty, *i.e.,* determined at the

appeals office level. Rev.Rul. 75–464, 1975–2 C.B. 474. And even after that determination, the Government further argues, reporting the payments on the employees' W–2 forms may be delayed until the issue is finally resolved through court litigation.

We need not resolve this controversy. To decide this case, it is enough to note that the Bank did report the FICA payments on the employees' W–2 statements. Accordingly, the reimbursement/consent provisions of the Treasury Regulations under section 6402 apply to this case.

paid FICA taxes without complying with section 6402 and its corresponding regulations.